Andrew Rozynski, Esq.
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
arozynski@eandblaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

-----------------------------------------------------------

| | |
|---|---|
| CLAUDETTE COUCH, <br>       Plaintiff, <br><br> v. <br><br> POPLAR BLUFF REGIONAL MEDICAL CENTER; CHSPSC, LLC, <br><br>       Defendants. | **Civ. No. 18-277** <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

-----------------------------------------------------------

Plaintiff, CLAUDETTE COUCH, by and through her undersigned counsel, EISENBERG & BAUM, LLP, hereby files this Complaint against Defendants, POPLAR BLUFF REGIONAL MEDICAL CENTER and CHSPSC, LLC and alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff CLAUDETTE COUCH is profoundly deaf and communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. Her deafness impacted her ability to learn and acquire language from

1

an early age, and as a result, she has difficulty communicating in English.[1] Plaintiff is likewise unable to effectively communicate by reading lips.[2]

2. Defendants both hindered and prevented Plaintiff from benefitting from their services, and discriminated against Plaintiff unlawfully, on the basis of Plaintiff's disability of deafness by refusing to provide the ASL interpreters that Plaintiff required to understand and participate in her infant child's medical care during a five-day hospitalization of her child in Defendants' facilities. This denial was in spite of Plaintiff's repeated requests for an interpreter.

3. Based on Plaintiff's allegations herein, it is evident that Defendants have failed to implement policies, procedures, and practices respecting the civil rights and communication needs of deaf individuals. Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf individuals to participate in and benefit from Defendants' health care services.

4. Plaintiff brings this action seeking declaratory, injunctive, and equitable relief; compensatory damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination against Plaintiff on the basis of her disability in violation of Title III of the

---

[1] Due to physical, environmental, and pedagogical factors, many deaf individuals have difficulty acquiring spoken languages such as English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because many deaf people acquire English as their second language (after ASL or another form of sign language) well past the critical developmental period of language acquisition.

[2] Lip-reading, or the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct communication through a qualified sign language interpreter. Only a small number of spoken sounds in aural language are visible, and many of those words appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language as English and ASL are distinct languages with disparate grammatical structures.

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 et seq.; and other state and common law causes of action.

## THE PARTIES

5.      Plaintiff CLAUDETTE COUCH brings this action as an individual residing in Corning, Arkansas. Plaintiff is a profoundly deaf individual who has limited English proficiency and who primarily communicates in American Sign Language. Plaintiff is substantially limited in the major life activities of hearing and speaking and is an individual with a disability within the meaning of federal and state civil rights laws.

6.      Defendant POPLAR BLUFF REGIONAL MEDICAL CENTER ("PBRMC") has a corporate address at 2620 N Westwood Blvd, Poplar Bluff, MO 63901. Defendant owns and operates a hospital called Poplar Bluff Regional Medical Center, which is located at 3100 Oak Grove Rd, Poplar Bluff, MO 63901. Upon information and belief, Defendant is the recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements.

7.      Defendant CHSPSC, LLC, at all times hereinafter mentioned, is a foreign nonprofit corporation that has been licensed and doing business in Missouri with a principal place of business at 4000 Meridian Blvd, Franklin, TN 37067. CHSPSC, LLC has designated CSC- Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, MO 65101 to accept service on its behalf. Defendant operated POPLAR BLUFF REGIONAL MEDICAL CENTER between November 22-27, 2016 and continues to do so. Defendant is a place of public accommodation under federal and state antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of Title III of the Americans with Disabilities Act, Section

1557 of the Patient Protection and Affordable Care Act, and Section 504 of the Rehabilitation Act.

## JURISDICTION & VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants are residents of this District and the acts and omissions giving rise to this Complaint occurred within this District.

## CONDITION PRECEDENT FOR MISSOURI HUMAN RIGHTS ACT CLAIMS

10. Pursuant to the requirements of the MHRA, Mo. Rev. Stat. § 213.111, et seq., Plaintiff filed a timely Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR").

11. The MCHR issued notice of the Right to Sue on October 22, 2018.

12. Pursuant to the requirements of the MHRA, Mo. Rev. Stat. § 213.111, et seq., this complaint is timely in that it was filed within ninety (90) days of the issuance of the notice of the Right to Sue and within two (2) years of the discriminatory actions which form the basis of Plaintiff's claims.

13. Therefore, Plaintiff has satisfied all conditions precedent to the filing of her Complaint for violations of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.111, et seq.

## STATEMENT OF FACTS

14. Plaintiff is a profoundly deaf individual who communicates primarily in American Sign Language (ASL).

15. Plaintiff has limited proficiency in English, cannot effectively communicate by reading lips, and requires auxiliary aids and services to communicate effectively in a medical setting.

16. On or about November 22, 2016, Ms. Couch rushed her infant son (R. T.) to Poplar Bluff Regional Medical Center in Oak Grove, Missouri for emergency medical treatment due to high fever and difficulty breathing. Ms. Couch and her infant son remained in the hospital until his recovery and release on November 27, 2016.

17. Upon her arrival on or about November 22, 2016, Ms. Couch informed staff that she was deaf and requested a sign language interpreter. Her request was denied.

18. Accordingly, Plaintiff was forced to rely on her sister Amanda Baker to serve as an interpreter. However, Defendant PBRMC's staff refused to allow Plaintiff's sister to interpret for her unless Plaintiff signed a waiver confirming that she was refusing an ASL interpreter. Because Defendant PBRMC refused to provide her with an interpreter or any other effective auxiliary aid, Plaintiff had no option but to have her sister interpret for her. Accordingly, Plaintiff had no choice but to sign the form.

19. Consequently, in spite of the fact that she is not a qualified interpreter, Ms. Couch's sister, Amanda Baker, was forced to serve as an interpreter in the emergency room. Ms. Baker had to leave the hospital several hours after Plaintiff's child's admittance. After Ms. Baker left the hospital, Plaintiff was deprived of any access to effective communication with hospital staff.

20. On November 23, 2016, Ms. Couch's son was moved to the pediatrics department, where a nurse began hooking Plaintiff's child up to various machines. Ms. Couch was unable to understand what the nurse was doing.

21. Ms. Couch again asked for an interpreter in order to communicate with the physicians, nurses, and staff, and to participate in and understand her son's treatment. She specifically requested that an interpreter be present to aid her in understanding her son's doctor, Dr. Bost, during his rounds.

22. However, Ms. Couch's requests for an ASL interpreter were again denied. Plaintiff was therefore unable to effectively communicate with medical staff including Dr. Bost.

23. Instead of an ASL interpreter, Defendant PBRMC's staff insisted on communicating with Ms. Couch through gestures, written notes, and Video Remote Interpreting System ("VRI").

24. Ms. Couch tried to communicate using Defendant PBRMC s VRI system several times but the connection was erratic, the screen was blurry, and the video feed skipped. [3]

25. A nurse named Sarah witnessed the ineffectiveness of the VRI system.

26. As a result of the ineffectiveness of Defendant PBRMC's VRI, Ms. Couch again requested an interpreter. This request was also denied.

27. Without the aid of an ASL interpreter, Plaintiff was not informed that the condition for which her child was being treated was Respiratory Syncytial Virus (RSV).

28. Without the aid of an ASL interpreter, Plaintiff was unable to fully understand the medications given to her infant son. She was unaware that he had been prescribed .25 mg of Albuterol (Accuneb) every four (4) hours to relieve his wheezing, and 125 mg of Amoxicillin

---

[3] Video Remote Interpreting (VRI) is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. VRI is inappropriate in many circumstances, including when the patient has other conditions that impair the patient's ability to utilize the device i.e., if the patient has a visual impairment, is in a lot of pain, or cannot achieve the proper posture; when there are many people in a room; when staff is inadequately trained to set up or operate the device; or in situations that are especially complicated or emergent.

(Amoxil) three (3) times daily.

29. Ms. Couch's son was discharged on November 27, 2016. No interpreter was provided to Plaintiff for the discharge of her son.

30. Ms. Couch therefore did not understand the instruction that she was expected to call for an appointment within three (3) days of her son's discharge for a follow-up appointment.

31. In fact, despite Plaintiff's repeated requests for an ASL interpreter throughout her son's six day hospitalization, Defendants failed to provide any interpreters or other effective auxiliary aids or services whatsoever.

32. However, in most instances, effective communication could not have taken place between Plaintiff and Defendant PBRMC's staff without the aid of a qualified ASL interpreter.

33. Indeed, as a result of Defendant PBRMC's failure to provide effective auxiliary aids and services, Plaintiff did not understand the reasons for her child's hospitalization; the purposes of the treatments being provided; the common risks and/or benefits of those treatments; the common risks, side effects, and benefits of medications given; the specific dosage instructions for medications given; the existence of any alternative treatments; the approximate length of care; the potential side effects of stopping treatment; the details of any aftercare or discharge instructions; etc.

34. Defendant PBRMC's discrimination against Plaintiff, and Plaintiff's resulting lack of understanding of her child's medical care, caused Plaintiff to suffer humiliation, anger, frustration, stress, anxiety, and emotional distress.

35. Defendant PBRMC and Defendant PBRMC's staff knew that Plaintiff is deaf and were aware that Plaintiff made repeated requests for interpreters.

36. Defendant PBRMC also knew or should have known of its obligation as a health

care provider under the ADA, the RA, ACA, MHRA and their equivalents to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including but not limited to the provision of ASL interpreters to ensure effective communication with deaf persons.

37. Defendant PBRMC and its staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

38. Nonetheless, Defendant PBRMC prevented Plaintiff from benefitting from its services by failing to provide the ASL interpreters necessary for her participation in and understanding of her child's care.

39. In doing so, Defendant PBRMC intentionally discriminated against Plaintiff and acted with deliberate indifference to her federally protected rights.

40. Defendant PBRMC's wrongful and intentional discrimination against Plaintiff on the basis of her disability is reflected by Defendant PBRMC's failure to train employees and promulgate policies of non-discrimination against deaf individuals.

41. Upon information and belief, Defendant PBRMC's Code of Conduct - which includes the communication access policy for patients hearing disabilities - is developed by Defendant CHSPSC, LLC, whose role is to provide management and consulting services to Defendant PBRMC.

42. Upon information and belief, Defendant CHSPSC controls the enforcement of the Code of Conduct within PBRMC facilities, and a CHSPSC's employee's role is to ensure that PBRMC is in compliance with the Code of Conduct and its communication access policy, as

developed by Defendant CHSPSC.

43. As a result of Defendant PBRMC's failure to ensure effective communication with Plaintiff, Plaintiff received services that were objectively substandard and that were inferior to those provided to patients and companions who are hearing.

44. Plaintiff is entitled to equal access to services offered by Defendant PBRMC as are enjoyed by non-disabled persons.

45. Plaintiff still wishes to access Defendant PBRMC's services and receive care in Defendant PBRMC's facilities both as a patient and as a companion, but is deterred from doing so by Defendant PBRMC's discrimination against her on the basis of her disability.

## CLAIM I: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

46. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

47. At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, et seq. has been in full force and effect and has applied to Defendants' conduct.

48. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

49. Defendants own, lease, and/or operate a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(D).

50. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §

9

12182(a).

51. Title III of the ADA defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

52. Federal regulations implementing Title III of the ADA provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities." 28 C.F.R. § 36.303(c).

53. Defendants discriminated against Plaintiff, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

54. Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with Title III of the ADA and its implementing regulations.

55. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

### CLAIM II:
### VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

56. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

57. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

58. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

59. At all times relevant to this action, Defendants have been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

60. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

61. The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

62. Defendants discriminated against Plaintiff, on the basis of disability, in violation of the Rehabilitation Act and its implementing regulations.

63. Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Rehabilitation Act and its implementing regulations.

64. Plaintiff is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

### CLAIM III: VIOLATIONS OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

65. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

66. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and has applied to the Defendants conduct.

67. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. §

11

18116.

68. At all times relevant to this action, Plaintiff's primary language for communication has been American Sign Language (and not English), and Plaintiff has had limited ability to read, write, speak, or understand English. Plaintiff has therefore been an individual with limited English proficiency within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 45 C.F.R. § 92.4.

69. At all times relevant to this action, Defendants received federal financial assistance, including Medicare and/or Medicaid reimbursements, and have been principally engaged in the business of providing health care. Therefore, Defendants are a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

70. Pursuant to Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

71. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take reasonable steps to provide meaningful access to each individual with limited English proficiency eligible to be served or likely to be encountered in its health programs and activities." 45 C.F.R. § 92.201.

72. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "(1) A covered entity shall offer a qualified interpreter to an individual with limited English proficiency when oral interpretation is a reasonable step to provide meaningful access for that individual with limited English proficiency; and (2) A

covered entity shall use a qualified translator when translating written content in paper or electronic form." 45 C.F.R. § 92.201(d).

73. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity that provides a qualified interpreter for an individual with limited English proficiency through video remote interpreting services in the covered entity's health programs and activities shall provide: (1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter's face and the participating individual's face regardless of the individual's body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the video remote interpreting." 45 C.F.R. § 92.201(f).

74. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities." 45 C.F.R.§ 92.202(a).

75. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "(1) A [covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a public entity shall give primary

13

consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 45 C.F.R.§ 92.202(a); 28 C.F.R. § 35.160(b).

76. As set forth above, Defendants discriminated against Plaintiff, on the basis of disability, in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

77. The Patient Protection and Affordable Care Act, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by discrimination in violation thereof. 42 U.S.C. § 18116(a).

78. Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Patient Protection and Affordable Care Act.

79. Plaintiff is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

## CLAIM IV: VIOLATIONS OF THE MISSOURI HUMAN RIGHTS ACT

80. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

81. At all times relevant to this action, the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 et seq., has been in full force and effect and has applied to Defendants' conduct.

82. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking and has been a qualified individual with a disability

within the meaning of the MHRA, Mo. Rev. Stat. § 213.010(4).

83. At all times relevant to this action, Defendants' facilities have been places of public accommodation within the meaning of the MHRA, Mo. Rev. Stat. § 213.010(15).

84. The MHRA, Mo. Rev. Stat. § 213.065(2), states that "[i]t is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation . . . or to segregate or discriminate against any such person in the use thereof on the grounds of . . . disability."

85. Defendants discriminated against Plaintiff on the basis of her disability by denying access to full and equal enjoyment of the accommodations, advantages, facilities, services, or privileges made available in their place of public accommodation, and by discriminating against Plaintiff in her use thereof, on the grounds of disability, in violation of the MHRA.

86. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff or additional deaf individuals or family members.

87. Plaintiff is therefore entitled to seek and recover injunctive relief, compensatory damages, attorneys' fees and costs, and punitive damages for the injuries and loss she sustained as a result of Defendants discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to Mo. Rev. Stat. § 213.111(2).

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil

Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act; Section 1557 of the Patient Protection and Affordable Care Act; and the Missouri Human Rights Act ("MHRA").

    b.    Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of Defendants' facilities, services, or programs;

    c.    Issue an injunction ordering Defendants:

        i. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

        ii. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly marked and worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

        iii. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

16

    iv. to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

    v. to train all their employees, staffs, and other agents on a regular basis about how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals;

    vi. to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

    vii. to train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, the RA, the ACA, and the MHRA;

d. Award to Plaintiffs:

    i. Compensatory damages pursuant to the ACA and the RA, as well as pursuant to the MHRA;

    ii. Punitive Damages pursuant to the MHRA;

    iii. Reasonable costs and attorneys' fees pursuant to the ADA, the RA, and the

    ACA and the MHRA;

  iv.  Interest on all amounts at the highest rates and from the earliest dates allowed by law;

  v.  Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: November 9, 2018

                        Respectfully submitted,

                        EISENBURG & BAUM, L.L.P

                        <u>/s/ Andrew Rozynski</u>

                        Andrew Rozynski, Esq.
                        Bar # NY-5054465
                        24 Union Square East
                        Fourth Floor
                        New York, NY 10003
                        (212) 353-8700
                        arozynski@eandblaw.com

CHACKES CARLSON, LLP

                        /s/ Kenneth M. Chackes

                        Kenneth M. Chackes, Bar # 27534MO
                        906 Olive Street, Suite 200
                        St. Louis, MO 63101
                        Telephone: (314)872-8420
                        Facsimile: (314) 872-7017
                        Email: kchackes@cch-law.com