UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| CLAUDETTE COUCH, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 1:18-cv-00277-SNLJ |
|  | ) |  |
| POPLAR BLUFF REGIONAL | ) |  |
| MEDICAL CENTER, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant CHSPSC, LLC.'s motion to dismiss (#13). The motion has been fully briefed. For the reasons set forth below, this Court will **GRANT** the motion. CHSPSC is hereby **DISMISSED without prejudice**.

### I. BACKGROUND

According to the complaint, plaintiff is a deaf individual who communicates primarily in American Sign Language (ASL). In November 2016, plaintiff took her infant son to Poplar Bluff Regional Medical Center (PBRMC)—one of two defendants in this case—for treatment related to complications with high fever and difficulty breathing. Plaintiff states that, upon arriving, she requested and was denied an ASL interpreter. Therefore, plaintiff was forced to rely on her sister to interpret for her. Her sister was allegedly permitted to interpret for her only after she signed a waiver formally refusing an ASL interpreter.

Eventually, plaintiff's sister had to leave the hospital and plaintiff, unable to effectively communicate with medical staff, was left confused about the treatment her child was receiving. Plaintiff again requested an ASL interpreter, and again she was denied. PBRMC, instead, tried to use a technology system called Video Remote Interpreting (VRI) that simulates sign language through an off-site interpreter. But, that system was purportedly ineffective and suffered connection problems.

After six days of hospitalization, plaintiff's son was released from care. She alleges her child had, ultimately, been treated for what she calls "respiratory syncytial virus." But, because she was unable to meaningfully participate, she goes on to say that she could not effectively make parental decisions about the risks and benefits of treatment and medication.

The other defendant, CHSPSC, purportedly provides "management and consulting services to defendant PBRMC, and specifically "controls the enforcement of the Code of Conduct within PBRMC facilities." This code includes communication accessibility policies for patients with hearing disabilities. The parties agree that "CHSPSC is a subsidiary of Community Health Systems, Inc. (CHSI), which is the entity that has owned [PBRMC] since 2014." The parties agree far less, however, about what level of control CHSPSC has over PBRMC in implementing the code, and this disagreement animates many of the arguments involved here. That said, the parties do not dispute that CHSPSC has no offices in Missouri, does not own or lease property in Missouri, is not authorized or licensed to operate a hospital in Missouri, does not maintain a telephone number in Missouri, and was not organized under Missouri law.

2

In any event, plaintiff lumps her four counts together as against both defendants. These counts include: Count I—violation of Title III of the Americans with Disabilities Act; Count II—violation of Section 504 of the Rehabilitation Act; (3) Count III—violation of the Patient Protection and Affordable Care Act; and (4) and Count IV—violation of the Missouri Human Rights Act. In moving for dismissal, CHSPSC makes two distinct arguments. First, it argues this Court lacks personal jurisdiction over it. Second, it argues Count IV fails to state a claim because plaintiff did not name it in the underlying complaint to the Missouri Commission on Human Rights in contravention of Section 213.075.1, RSMo.

**II. ANALYSIS**

To begin, this Court finds the issue of personal jurisdiction is outcome determinative and, therefore, CHSPSC's second argument related to the fitness of Count IV under Rule 12(b)(6) need not be addressed. Moreover, the parties make clear that only the existence or lack thereof of specific personal jurisdiction is in dispute. Plaintiff concedes through her arguments that she does not challenge the lack of general jurisdiction over CHSPSC.

In order for a state court to exercise specific jurisdiction over a party, "the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017) (internal quotations omitted). Said differently, there must be "an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State." *Id*. When "there is no such connection,

specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Id*. at 1781. Because of this requirement, specific jurisdiction has been called "conduct-linked jurisdiction," which focuses upon the specific conduct of the defendant in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Necessarily, then, each bases for plaintiff's claim of specific jurisdiction over CHSPSC requires careful scrutiny since the existence of specific jurisdiction can hinge on narrow analytical differences.

Plaintiff's first argument is that CHSPSC should be haled into Missouri because the "resultant injury" occurred here. That argument is all but forestalled by *Walden v. Fiore*, 571 U.S. 277 (2014), in which the Supreme Court explained "[m]ere injury to a forum resident is not a sufficient connection to the forum." *Id*. at 290. Instead, the focus is properly upon "the contacts that the defendant *himself* creates with the forum State." *Id*. at 284 (emphasis in original). And, on that front, there are almost no such contacts. Again, the parties do not dispute that CHSPSC has no offices in Missouri, does not own or lease property in Missouri, is not authorized or licensed to operate a hospital in Missouri, does not maintain a telephone number in Missouri, and was not organized under Missouri law.

In a related, though loosely supported, argument, plaintiff also points to the fact that "the effect" of CHSPSC's conduct was felt in Missouri. Plaintiff seems to focus not so much on the location of the resultant injury, but instead on the fact that "CHSPSC *purposefully directed its activities* [at] Missouri" when it "required its in-state affiliated hospital—PBRMC—to adopt CHSPSC's policies and code of conduct." (emphasis

4

added). In support, plaintiff cites *Calder v. Jones*, 465 U.S. 783 (1984), which established a so-called "effects test doctrine" that expanded on the concept of jurisdictional contacts to include a defendant's activities that have an "effect" in the forum state. Id. at 788. But, in order for that doctrine to apply, *Calder* carefully distinguished between jurisdictionally insufficient "*untargeted* negligence" and jurisdictionally proper "intentional" activity that was "*expressly aimed* at [the forum state]." Id. at 789 (emphasis added). The problem for plaintiff's argument is that she does nothing to shift this case from the former variety into the latter.

To be sure, plaintiff acknowledges the diffuse nature of CHSPSC's conduct that required "each affiliated hospital"—not just a hospital located in Missouri—to adopt the at-issue code. So, it can hardly be said that CHSPSC was "expressly aim[ing]" its conduct at Missouri when developing the code. *Id*. In plaintiff's own words, the code of conduct was created by CHSPSC "to provide *all persons and businesses associated with [CHSI]*"—its parent company—"with guidance to perform their daily activities in accordance with the organization's ethical standards and all federal, state, and local laws[.]" (emphasis added). Furthermore, she "does not allege the code of conduct, itself, is deficient." On the other hand, to the extent she focuses not on the creation of the code but, instead, its implementation, she does not allege any implementation-related conduct by CHSPSC that led to her injury. As defendant aptly points out "she [does not] allege PBRMC violated the code of conduct, that PBRMC had a history of violating the code of conduct, *or that CHSPSC was placed on notice that PBRMC violated the code of conduct during her visit*." (emphasis added). The Supreme Court has highlighted the narrow

5

contours of specific jurisdiction by explaining that "some single or occasional acts … may sometimes be enough to subject [a] corporation to jurisdiction," but only "with respect to suits *relating to that in-state activity*." *Daimler AG*, 571 U.S. at 127 (emphasis added). Here, plaintiff provides no evidence that CHSPSC took any specific action *itself*—as distinguished from PBRMC—that would relate to her claims; in other words, there are no "suit-related" contacts. Thus, at most, CHSPSC's conduct amounts to broadly targeting the businesses of its parent company, which has little or nothing to do with Missouri in particular. This leaves CHSPSC's actions squarely in the realm of diffuse, untargeted conduct deemed insufficient by both *Calder* and *Walden*. *Calder*, 465 U.S. at 789; *Walden*, 571 U.S. at 289-290.

Plaintiff second argument asserts that CHSPSC "reasonably anticipated being haled into court in Missouri … [because it] acknowledge[d] that violations of portions of [its] Code relating to federal healthcare benefit programs may lead to severe consequences including, but not limited to, civil monetary penalties and/or exclusions from federal healthcare benefit programs." In essence, plaintiff argues CHSPSC should be subject to specific jurisdiction because it knew it might be subject to civil penalties under federal law. Whether subject to such penalties or not, that argument has nothing at all to do a specific jurisdiction analysis, which focuses on the quality of contacts a defendant has with the forum state. *See Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780; *Daimler AG*, 571 U.S. at 126-127.

As for plaintiff's third argument, she points to CHSPSC's "active involvement in PBRMC's operations" and argues it "assume[d] control over PBRMC" by developing

certain educational and training programs on PBRMC's behalf and by independently investigating issues of non-compliance therewith. It appears plaintiff is again raising essentially the same issue that CHSPSC somehow targeted Missouri through its operational efforts assisting PBRMC and, in that way, subjecting itself to specific personal jurisdiction. For the reasons explained above, that argument still fails.

Plaintiff's final argument—that jurisdiction must be exercised over CHSPSC because injunctive relief, if granted, would be ineffective otherwise—notably includes no supporting legal citations. The general rule is that a district court is "powerless to proceed in the absence of personal jurisdiction," and that rule "applies with no less force" in the context of injunctive relief. *Khatib v. Alliance Bankshares Corp.*, 846 F.Supp.2d 18, 25 (D.D.C. 2012); *see also Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) (treating personal jurisdiction and injunctive relief as "analytically separate inquir[ies]"). Thus, it would be an odd result to claim jurisdiction on this basis alone. And, in any event, plaintiff does nothing to explain why injunctive relief against PBRMC would not be effective without CHSPSC's inclusion in this case.

Ultimately, this Court finds that it does not have personal jurisdiction over CHSPSC under any of the theories advanced by plaintiff. Therefore, CHSPSC will be dismissed from this case for lack of jurisdiction.

III. **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that defendant CHSPSC, LLC.'s motion to dismiss (#13) is **GRANTED**. CHSPSC is hereby **DISMISSED without prejudice**.

So ordered this 19th day of April 2019.

                                                                     _____
                                                                     STEPHEN N. LIMBAUGH, JR.
                                                                     UNITED STATES DISTRICT JUDGE